(No. 4100—

Flo McIntyre, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed March 24, 1949.*

*Petition of Respondent for Rehearing denied May 12, 1949.*

Paulson, Morgan & Jordan, Attorneys for Claimant.

Hon. Ivan A. Elliott, Attorney General, and Archie I. Bernstein, Assistant Attorney General, for Respondent.

Bergstrom, J.

Claimant, Flo McIntyre, was employed on May 9, 1947 as an attendant by respondent at the Elgin State Hospital in the Department of Public Welfare. On that day, while hurrying on an errand in the course of her duties, she slipped on a waxed floor, fell, and broke her

hip. Claimant, 53 years of age, was immediately taken to the hospital. Her injury caused intense pain, requiring administration of morphine every two hours.

No jurisdictional question is raised by the record. Respondent and claimant were operating under the Workmen's Compensation Act, and the accident in question arose out of and in the course of the employment.

Respondent furnished complete surgical, medical and hospital treatment. The only question is the extent of permanent disability of claimant and the extent of the permanent and partial loss of use of claimant's left leg.

Dr. Paul Tobin, physician and surgeon, of Elgin, Illinois, was brought into the case as an orthopedic consultant by the doctors of the Elgin State Hospital where claimant received all her medical treatment. He examined claimant within forty-eight hours after her injury. He testified that at the time of his initial examination the X-rays of claimant revealed a high fracture of the neck of the left femur, commonly called an intracapsular fracture. This fracture was explained as being in the upper part of the thigh bone which is offset and supports the head of the thigh bone which, in turn, fits into the pelvis which supports the body. Dr. Tobin said this injury is generally caused by a fall. He described claimant as unable to stand or bear weight. She suffered pain on motion of her left leg.

Surgery was performed by Dr. Tobin on May 19, 1947, and the fracture was reduced. Dr. Tobin was assisted by Dr. Hudell of the staff of the Elgin State Hospital. Claimant then wore a plaster cast for a week, following which she was permitted to get up on crutches without weight bearing. She left the hospital on crutches on July 21, 1947, and was incapacitated for about six months following the injury. Repeated checks by X-ray

indicated the fracture mended well. Claimant returned to work December 15, 1947. However, on February 19, 1948 she re-entered the hospital, complaining of pain in her knee and hip. On March 4, 1948 claimant underwent another operation to remove the Smith-Peterson nail which had been inserted at the time of her first operation to hold the bone in place and alignment to promote calcification and bony union. It was believed that possibly the presence of the nail was causing her trouble and the recurrence of pain. Sometime thereafter, further X-rays were taken, as claimant continued to suffer pain. It was found from the X-rays that, although the fracture itself had healed, claimant was developing an asceptic necrosis of the head of the femur. Dr. Tobin explained this condition meant the bone was dying without presence of infection. He stated the cause was that the neck fracture shut off the blood flow circulation to the head of the femur, a common development of such type of fracture. Such condition was described as productive of immediate pain in the knee and hip upon standing or walking, making it very difficult for the patient to bear weight on the leg.

Dr. Tobin expressed his opinion that claimant could no longer carry on any work except with the aid of a crutch and could not perform any work that would entail being on her feet. He said she could not return to her former employment as cook or attendant. Dr. Tobin stated claimant was suffering 100 per cent general disability for any working purposes requiring her to stand or bear weight on her leg and 50 per cent partial permanent disability regarding use of her left leg. He told that the condition of necrosis would get worse instead of better. He related, however, a possible non-operative treatment whereby the patient is put to bed for four or

five months and then put in a walking caliper, a splint to prevent weight bearing by shifting weight to the pelvis. He added that sometimes after wearing the splint for about a year and a half the head of the femur becomes revascularized. Dr. Tobin estimated the medical, surgical and hospital expense of such course of treatment would approximate $1,000.00.

Dr. John C. Hudell, physician and surgeon on the staff of the Elgin State Hospital, gave claimant medical treatment in conjunction with Dr. Tobin. He completely corroborated and substantiated the testimony of Dr. Tobin in connection with the case history, treatment and extent of claimant's injuries. Dr. Hudell mentioned the Elgin State Hospital had frequently called on Dr. Tobin to assist as a consultant. Dr. Hudell declared of his own knowledge, being at the hospital at the time, that claimant was injured while in the course of her employment.

Claimant attempted to return to work during June, 1948, following her second operation. However, she had to stop immediately. She had to have her leg dressed at the hospital; her temperature had risen to 101 degrees. She has not worked since because of the pain and suffering in her hip and leg. She testified she presently suffers pain even while sitting down.

The only evidence in the record concerning the extent of disability of claimant and extent of the permanent and partial loss of the use of her left leg is that furnished by Drs. Tobin and Hudell, both employed by respondent. The Court concurs in their findings. Claimant, by reason of her injury, has been rendered completely disabled, and is wholly and permanently incapable of working.

Claimant was employed at the rate of $120.00 per month, $1,440.00 per annum, at the time of her injury;

this represents $27.69 per week. Therefore, claimant's weekly rate of compensation would be $13.84, increased 20% as by statute provided, or $16.61, the accident having occurred after July 1, 1945 and before July 1, 1947. Claimant is entitled to an award computed under Section 8, Paragraph (f) and Section 7 Paragraphs (a and k) of the Workmen's Compensation Act, of $4,800.00 for her complete and permanent disability, payable at the rate of $16.61 per week from May 10, 1947 until the said sum has been fully paid; and, after the payment of said sum of $4,800.00, an annual pension of $384.00 payable in monthly installments of $32.00.

Helen Wehrle took and transcribed the testimony and evidence, for which service she submitted her charge in the sum of $30.00, which sum we find fair and reasonable.

An award is therefore entered in favor of claimant, Flo McIntyre, in the sum of $4,800.00, payable as follows:

$1,627.78 which has accrued, is payable forthwith;

$3,172.22 to be paid in weekly installments of $16.61 beginning April 2, 1949 for a period of 190 weeks, with a final payment of $16.32; thereafter a pension for life in the sum of $384.00 annually, payable in monthly installments of $32.00.

An award is also made in favor of Helen Wehrle for stenographic services in the amount of $30.00, which is payable forthwith.

Jurisdiction is specifically reserved in this cause for the entry of such further order or orders as may from time to time be necessary.

This award is subject to the approval of the Governor as provided in section 3 of "An Act concerning the payment of compensation awards to State employees."